## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JANICE HINDS**,

Plaintiff,

v.

**JOHN MICHAEL MULVANEY**, Acting
Director, Consumer Fraud Protection Bureau

Defendant.

Case No. 1:17-cv-00023 (TNM)

## MEMORANDUM OPINION

Plaintiff Janice Hinds, who is proceeding pro se, alleges that her employer, the Consumer
Financial Protection Bureau,[1] discriminated against her on the basis of race and sex on seven
occasions and retaliated against her for opposing Title VII violations on 14 occasions. Her
complaint seeks $20 million in punitive damages, $300,000 in compensatory damages, $300,000
in interest, a pay raise, and any reasonable attorneys' fees and costs. Her case comes before me
on the Defendant's motion to dismiss in part and for summary judgment. Because there is no
genuine dispute of material fact and the Defendant is entitled to summary judgment, the
Defendant's motion will be granted.

## I. BACKGROUND

According to the complaint, Ms. Hinds an African-American woman who was initially
hired by the Federal Government on June 19, 1992 at the GS-7 level. Compl. ¶ 10. Ms. Hinds

---

[1] Ms. Hinds' complaint named Richard Cordray as the Defendant, in his official capacity as
Director of the Consumer Financial Protection Bureau ("CFPB"). Mr. Cordray's successor, John
Michael Mulvaney, has been automatically substituted as the Defendant by operation of Federal
Rule of Civil Procedure 25(d).

alleges that, in the 21 years between that time and the time that she began her current job as an examiner for the CFPB, she worked at a number of federal agencies, where she received numerous promotions and was never reprimanded. *Id.* ¶¶ 10-11. During her time at the CFPB, Ms. Hinds alleges, she has been denied promotion, reprimanded, and otherwise subjected to race and sex discrimination in violation of Title VII. *Id.* ¶¶ 17-25. Ms. Hinds also alleges that she has been repeatedly subjected to retaliation for opposing Title VII violations. *Id.* ¶¶ 26-40. Each allegation will be discussed below, in connection with its merits.

However, one allegation may be worth mentioning at the outset, given that Ms. Hinds has emphasized it in at least nine subsequent filings and because it provides some context for the allegations that follow. Ms. Hinds claims that her then-manager, Marsha Vaughn, "inappropriately distributed a violent image to the Plaintiff and other employees who reported to her." Compl. ¶ 36. Ms. Hinds' filings repeatedly refer to this "**[e]mail containing a horrifically violent image depicting the overkill [of] a snowman that was slaughtered by five machetes** that the Plaintiff's former manager, Marsha Vaughn, sent to her and all of the employees who report to her."[2] According to the complaint, the fact that Ms. Vaughn sent this

---

[2] *See, e.g.*, Pl.'s Mot. Determine Whether Certain Witnesses Provided False and Misleading Statements Under Penalties of Perjury Ex. A (emphasis in original); Pl.'s Mot. Declare that the ROI Violates 29 CFR 1614 108(b) and Initiate a DOJ Referral Ex. A (same); Pl.'s Motion to Address False Information and Potential Evidence Tampering Ex. A (same); Pl.'s Reply ISO Mot. Notify Court of Significant Evidence Ex. C (same); Pl.'s Reply ISO Mots. Ex. D (without emphasis); *see also* Correction to Pl.'s Opp. to Def.'s Mot. Summary Judgment Ex. A ("Horrifically violent email that the Plaintiff's manager sent to her and all of the employees who report to her."); Reply ISO Pl.'s Mot. Obtain Procedures for the Submission of Documents Secured Under a Protective Order Ex. A (same); Pl.'s Mot. Reconsideration for a Court-Appointed Attorney Ex. C ("Ture [sic] copy of a horrifically violent email that the Plaintiff's manager resent to all of the employees who reported to her. The Plaintiff submitted this true copy of the email to the EEO Investigator as evidence to substantiate that Ms. Vaughn subjected her to actions that were in violation of Title VII."); Pl.'s Reply ISO Mot. Reconsideration for a Court-Appointed Attorney Ex. D ("True copy of an email that the Plaintiff submitted to the EEO Investigator. The email contained a horrifically violent image depicting a snowman being

email supports Ms. Hinds' view that the CFPB was retaliating against her by assigning her to work under Ms. Vaughn. *Id.* The record reflects that, on February 3, 2015, someone sent an email titled "winter" to several people, including Ms. Hinds and Ms. Vaughn. *Id.* The email asks, "Joe—is this your thoughts?" and contains the following image:



*Id.*[3] Ms. Vaughn's reply to the group states, "I love this!!" *Id.* Although the interpretation of Ms. Vaughn's reply email could perhaps be subjective, Ms. Hinds appears to see the specter of the slaughtered snowman as a particularly pointed and chilling example of her mistreatment.

---

slaughtered by vive [sic] machetes that the Plaintiff's manager sent to all of the employees who reported to her. The email was initiated by a White employee and Ms. Vaughn glorified it by stating in the email 'I love this!!'.").

[3] Although I would not typically include pictures in the staid pages of the Federal Supplement, Ms. Hinds previously accused an EEO investigator of malfeasance for failing to include this image in her report on Ms. Hinds' complaints. *See, e.g.*, Pl.'s Opp. to Def.'s Mot. Summary Judgment at 7-8 (alleging that investigator's omission of the slaughtered snowman's image demonstrated bias and was "an obvious attempt to help the CFPB fight against the Plaintiff's claims"). I do not wish to be accused of a similar omission.

Ms. Hinds initially contacted the CFPB's Equal Employment Opportunity ("EEO") Office in September 2013, but she did not have sufficient evidence to lodge a formal complaint at that time. *Id.* ¶ 14. On March 28, 2014, Ms. Hinds again contacted the EEO Office, and on May 15, 2014, she filed her formal EEO complaint. *Id.* Ex. A at 1. The CFPB's Office of Civil Rights investigated Ms. Hinds' complaint, which it permitted her to amend four times during the course of the investigation. *Id.* On November 9, 2016, an initial adjudicator issued a decision granting the Defendant's motion for summary judgment on several grounds, including that there was no evidence of discriminatory or retaliatory intent, that there was no evidence linking the alleged harassment to Ms. Hinds' race or sex, and that the preponderance of the evidence did not show that the Defendant's legitimate, non-discriminatory reasons for the allegedly retaliatory actions were pretextual. *Id.* at 4-5. The decision noted that "most of Ms. Hinds' claims were petty disputes about agency policy or objection[s] to minor and rote activities taken by the agency" and that Ms. Hinds appeared to have read a report related to the CFPB's diversity and to have "conclude[d] that she was a victim of discrimination before she reported to work on her first day." *Id.*[4] The CFPB adopted the decision's findings and analysis in a final agency order on November 18, 2016. *Id.* at 6.

---

[4] In addition to citing this report, Ms. Hinds seeks to bolster her claims of discrimination and retaliation by noting that the Financial Services Committee of the United States House of Representatives has conducted hearings to investigate allegations of Title VII violations by the CFPB. Pl.'s Opp. to Def.'s Mot. Summary Judgment at 29. She also cites an affidavit by a male CFPB employee who, at the time of the affidavit, had filed a grievance against one of Ms. Hinds' former managers and was planning to leave the CFPB mainly because of his frustrations with that manager. *Id.* at 28; *id.* Ex. J at 2449. This employee complained about the manager's general management style, lack of qualifications, and political maneuverings. *Id.* at 2449-50. He also stated that he had not personally observed the manager's treatment of Ms. Hinds. *Id.* at 2450. However, when he was directly asked whether he had reason to believe Ms. Hinds' former manager had subjected her to discrimination, he stated that the manager "has a problem with women generally." *Id.* at 2451. The same employee had previously noted that he was

After receiving the CFPB's final order, Ms. Hinds filed a timely complaint in this court. The Defendant filed a motion to dismiss in part and for summary judgment on April 4, 2017. The motion is now ripe, and I conclude that it should be granted for the reasons explained below.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once this showing has been made, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Although the Court applies "less stringent standards" to pro se filings than to filings drafted by lawyers, a pro se plaintiff's opposition to a motion for summary judgment "must consist of more than mere unsupported allegations and must be supported by affidavits or other competent evidence setting forth specific facts showing

---

aware of two men and two women who had experienced problems with Ms. Hinds' former manager. *Id.* at 2449.

that there is a genuine issue for trial." *Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 21-22 (D.D.C. 2010).

## III. ANALYSIS

### A. The Defendant Is Entitled to Summary Judgment on Each of Ms. Hinds' Unexhausted Discrimination and Retaliation Claims

A federal employee may only assert a Title VII claim in federal court after presenting a timely complaint to the agency involved and exhausting available administrative remedies. *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 92 (D.D.C. 2005) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976)); *see also* 42 U.S.C. § 2000e-16(c). To present a timely claim to an agency, a Title VII claimant generally must "initiate contact with a[n EEO] Counselor within 45 days" of the conduct of which she complains and, if counseling does not resolve her concerns, file a formal administrative complaint within 15 days after the counseling period ends. 29 C.F.R. § 1614.105(a)(1), (d).[5] Only if she has followed these steps without obtaining satisfactory relief may a federal employee bring a Title VII claim in federal court. *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 33 (D.D.C. 2003). If a federal employee alleges multiple Title VII violations, each claim must be administratively exhausted, including claims that arise after the filing of an initial administrative complaint, with a possible exception for retaliation claims that "are related to the claims in the initial administrative complaint and were specified in that complaint to be of an ongoing and continuous nature." *See Thomas v. Vilsack*, 718 F. Supp. 2d 106, 121 (D.D.C. 2010) (applying this exception while noting that the D.C. Circuit has not addressed the issue and some D.C. District Court opinions have not recognized an exception).

---

[5] The counseling period is generally 30 days, but may be extended an additional 60 days under certain circumstances. *See* 29 C.F.R. § 1614.105(e).

Ms. Hinds initiated contact with an EEO Counselor on March 28, 2014. Compl. Ex. A at 1.[6] Accordingly, her Title VII claims were not timely presented to the agency with respect to conduct prior to February 11, 2014. *See* 29 C.F.R. § 1614.105(a)(1). Much of the conduct that Ms. Hinds complains about in her first, second, and third discrimination claims took place before this date. Compl. at ¶ 18-20. The Defendant is entitled to summary judgment on these claims to the extent that they involve concerns not timely presented to the CFPB. *See Rosier*, 833 F. Supp. 2d at 5. Ms. Hinds' tenth, eleventh, and twelfth retaliation claims concern conduct that took place after her initial administrative complaint and more than 45 days before she sought to amend her complaint to include her new concerns. *See* EEOC Decision on Agency Motion for Summary Judgment at 4; Def.'s Memo. ISO Mot. Summary Judgment at 30-32; *id.* Ex. II at 306-308. The Defendant is entitled to summary judgment on these claims as well.

Although Ms. Hinds has not expressly opposed summary judgment for failure to exhaust, she has opposed dismissal for failure to exhaust based on 29 C.F.R. § 1614.105(a)(2), which allows an extension of the 45-day limit for initiating counseling if "despite due diligence [the aggrieved person] was prevented by circumstances beyond his or her control from contacting the counselor within the time limits." Pl.'s Opp. to Def.'s Mot. Dismiss at ¶¶ 39, 46, 47. According to Ms. Hinds, she initiated contact with the EEO office "as soon as she was aware of the alleged actions," and the CFPB's Office of Civil Rights accepted her explanation for failing to initiate counseling within the ordinary 45-day period. *Id.* at ¶ 39. However, the actions in question are ones of which she must have been aware soon enough to satisfy the 45-day limit with the

---

[6] Ms. Hind's earlier contact, in September 2013, is not relevant to the timeliness of her claims because it did not lead to the filing of a formal administrative complaint, which would have been a necessary prerequisite to asserting her claim in federal court. *See Bowie*, 283 F. Supp. 2d at 33; *see also* Compl. at ¶ 14.

exercise of due diligence.[7]  Ms. Hinds' allegation to the contrary is unsupported by the record

and does not satisfy her burden of setting forth "specific facts showing that there is a genuine

issue for trial."  *See Anderson*, 477 U.S. at 250.  Accordingly, the Defendant is entitled to

summary judgment on Ms. Hinds' unexhausted discrimination and retaliation claims.[8]  Even if

Ms. Hinds had satisfied Title VII's exhaustion requirements, however, her claims would fail on

the merits for the reasons explained below.

### B.  The Defendant Is Entitled to Summary Judgment on Each of Ms. Hinds' Discrimination Claims

Title VII makes it unlawful for an employer "to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment" or "to limit,

segregate, or classify his employees . . . in any way which would deprive or tend to deprive any

individual of employment opportunities or otherwise adversely affect his status as an employee"

on the basis of that individual's race, color, religion, sex, or national origin.  42 U.S.C.

§ 2000e-2(a).  Title VII discrimination claims are subject to the burden-shifting framework

established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The plaintiff bears the

initial burden of establishing a prima facie case of discrimination by establishing that: "(1) she is

---

[7] *See* Compl. at ¶ 18 (alleging that a manager gave Ms. Hinds a verbal warning about violating agency policy more than 45 days before Ms. Hinds initiated contact with an EEO counselor); *id.* at ¶ 19 (alleging that a manager asked Ms. Hinds about why she chose a certain workstation more than 45 days before Ms. Hinds initiated contact with an EEO counselor); *id.* at ¶ 20 (alleging that a manager called Ms. Hinds and threatened to give her a substandard rating for her 2013 annual performance more than 45 days before Ms. Hinds initiated contact with an EEO counselor); *id.* at ¶ 36 (alleging that a manager notified Ms. Hinds that she was Ms. Hinds' new manager more than 45 days before she sought to amend her complaint); *id.* ¶ 37 (alleging that a manager planned a visit to an exam on which Ms. Hinds was working more than 45 days before she sought to amend her complaint); *id.* at ¶ 38 (alleging that a manager asked Ms. Hinds to attend a team meeting more than 45 days before she sought to amend her complaint).

[8]  This conclusion makes it unnecessary for me to reach the Defendant's alternative argument that Ms. Hinds' unexhausted discrimination claims should be dismissed.

a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). Rather, "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

If the plaintiff states a prima facie case of discrimination, the employer then bears the burden of identifying "the legitimate, non-discriminatory . . . reason on which it relied in taking the complained-of action." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). If the employer provides such an explanation of its conduct, the central question on a motion for summary judgment is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee" on a protected basis. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).[9]

---

[9] One other rule bears passing reference. To state a hostile work environment claim, "a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). As the Defendant's thorough and helpful briefing notes, Ms. Hinds' complaint does not expressly assert a hostile work environment claim. Def.'s Memo. ISO Mot. Summary Judgment at 36-38; Def.'s Reply ISO Mot. Summary Judgment at 20-21. Ms. Hinds has not disputed this characterization of her claims in her opposition or in her many other filings. However, Ms. Hinds' complaint does allege that micromanagement by one of her managers "gave rise to a hostile and abusive environment as he continued to subject her to actions and inactions in violation of Title VII and the CFPB policies and procedures." Compl. ¶ 19. This statement appears to be a conclusion that Ms. Hinds wishes me to reach based on her allegation that the manager asked her about why she chose to work at a certain workstation. *See id.* To the extent

Ms. Hinds' seven discrimination claims fail because the conduct of which she complains has non-discriminatory justifications and she has not raised a triable issue of fact as to whether these justifications are pretextual. Many of her claims fail for the additional reason that the conduct of which she complains does not qualify as adverse employment action.

Ms. Hinds' first discrimination claim fails for both these reasons.[10] It alleges that Ms. Hinds' former HR manager, Milton Pepin, verbally warned her about violating the CFPB's travel policy and gave her a letter of counseling. Compl. ¶ 18. Ms. Hinds alleges that, during the time she worked for him, Mr. Pepin did not give other employees letters of counseling, but she does not allege that any other employees engaged in conduct similar to her own. *Id.* Ms. Hinds also alleges that she later discovered that a CFPB management official drafted a five-day suspension letter but did not serve it to her. *Id.* These allegations do not concern an adverse employment action. *See Turner v. Shinseki*, 824 F. Supp. 2d 99, 116 (D.D.C. 2011) (holding that verbal and written criticisms are not adverse employment actions "unless they are tied to the employee's bonus, or result in some other material employment action"); *Baloch*, 550 F.3d at 1201 ("[C]ourts have been unwilling to find adverse actions where the suspension is not actually served."). Moreover, the Defendant has explained the challenged conduct on non-discriminatory grounds that Ms. Hinds has not disputed: Ms. Hinds was reprimanded because she traveled from her home in Connecticut to New York City for her background-investigation interview without

---

that this statement could be liberally construed as a separate hostile work environment claim, it is conclusory and inadequate. Although the complaint alleges numerous instances of perceived discrimination, it does not adequately allege facts showing that Ms. Hinds was actually subject to discrimination that was sufficiently severe or pervasive to state a hostile work environment claim.

[10] Alternatively, as explained above, this claim also fails because Ms. Hinds did not raise it in a timely manner.

required authorization after being specifically instructed not to travel to New York for the interview and after confirming with Mr. Pepin that the interview would be conducted locally. Def.'s Memo. ISO Mot. Summary Judgment at 11-13. Thus, the Defendant is entitled to summary judgment as to this claim.

Ms. Hinds' second discrimination claim fails for similar reasons.[11] Ms. Hinds alleges that Mr. Pepin micromanaged her and, specifically, that he questioned why she chose a specific workstation when she was working on an assignment in New York, even though other examiners selected their workstations without being questioned by their managers. Compl. ¶ 19. This allegation does not state a prima facie case of discrimination because it does not concern "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio*, 306 F.3d at 1131. Even if Ms. Hinds had stated a prima facie case, the Defendant has satisfied the burden of providing a non-discriminatory explanation of the only conduct specifically alleged in this portion of the complaint: Mr. Pepin asked Ms. Hinds why she picked the workstation she did because he had heard there were interpersonal issues that made her not want to sit with the other examiners even though her assignment to the New York project had been intended to help her practice working in a group environment. Def.'s Memo. ISO Mot. Summary Judgment at 14; *id.* Ex. F at 1519-20. Ms. Hinds has not challenged this explanation, and the Defendant is entitled to summary judgment on her second discrimination claim.

---

[11] As discussed above, Ms. Hinds did not timely raise her concerns about Mr. Pepin's question regarding her choice of workstations, and the Defendant is entitled to summary judgment on these grounds as well.

Ms. Hinds' third discrimination claim fairs no better.[12]  Ms. Hinds alleges that Mr. Pepin

called her by phone and threatened to rate her 2013 annual performance as substandard; that

although Mr. Pepin ultimately decided to rate her performance as acceptable, she deserved a

higher rating; and that Mr. Pepin wrote negative comments in her 2014 performance evaluation,

which were later removed as part of a settlement agreement.  Compl. ¶ 20.  Mr. Pepin's alleged

threat was not an adverse employment action because it did not materialize and did not result in

materially adverse consequences or objectively tangible harm.  *See Valles-Hall v. Ctr. for*

*Nonprofit Advancement*, 481 F. Supp. 2d 118, 144 (D.D.C. 2007).  Moreover, performance

evaluations are generally not actionable as adverse employment actions, unless they can be

causally linked to some objectively tangible harm, such as the denial of a bonus or of

consideration for a promotion, which Ms. Hinds has not alleged.  *Douglas*, 559 F.3d 552.

Finally, the Defendant argues, and Ms. Hinds has not meaningfully contested, that Mr. Pepin's

conduct was justified on the non-discriminatory basis of Ms. Hinds' "documented difficulties

meeting deadlines, following instructions and policies, and communicating with others."  Def.'s

Memo. ISO Mot. Summary Judgment at 15.

Ms. Hinds' fourth discrimination claim is that Mr. Pepin denied her requests for

reimbursement requests of $631.45 in business travel expenses between March 28 and April 14

of 2014.  Compl. ¶ 21.  The Defendant has explained that Mr. Pepin's conduct was justified on

the non-discriminatory ground that Ms. Hinds incurred a variety of travel expenses for

unauthorized and unnecessarily expensive travel arrangements during this period, including

expenses that she was warned in advance could not be reimbursed.  Def.'s Memo. ISO Mot.

---

[12]  Indeed, even before reaching the merits, Ms. Hinds' claim regarding her 2013 annual
performance review could be disposed of on the alternative ground that Ms. Hinds failed to
exhaust her claim, as discussed above.

Summary Judgment at 16. Because Ms. Hinds has not established a genuine dispute as to whether this justification is pretextual, the Defendant is entitled to summary judgment on this claim.

Ms. Hinds' fifth discrimination claim is that Mr. Pepin failed to promote Ms. Hinds on May 5, 2014 and, relatedly, that he did not conduct a promotion review within 30 days of that date, did not review the materials she sent him to demonstrate her eligibility for promotion, asked her to send him copies of her work product, and did not respond to one of Ms. Hinds' emails requesting promotion. Compl. ¶ 22. The Defendant has explained that promotion is not automatic or guaranteed and that an employee must demonstrate the ability to perform at the next-higher level in order to be considered ready for promotion. Def.'s Memo. ISO Mot. Summary Judgment at 17. The Defendant has further explained that Mr. Pepin was justified in concluding that Ms. Hinds had not demonstrated the ability to perform at the next higher level because, among other things, she refused to provide him copies of her work product so that he could evaluate her performance, she did not participate in the exam where Mr. Pepin had planned for her to demonstrate the ability to play a leadership role, and she had a repeated pattern of disregarding CFPB policies and direct instructions about travel, which is an integral part of her role. *Id.* at 18-19. Ms. Hinds has not established a genuine dispute as to pretext and cannot go forward with this claim.

Ms. Hinds' sixth discrimination claim is that Mr. Pepin subjected her to "berating email messages" that she views as "trivial, micro managing [sic] and unnecessary." Compl. ¶ 23. This allegation does not concern an adverse employment action. Moreover, the Defendant has alleged that Mr. Pepin's emails were motivated by the legitimate, non-discriminatory goal of supervising and assisting a new examiner, citing to several emails that articulate Mr. Pepin's desire to

promote Ms. Hinds' professional development. Def.'s Memo. ISO Mot. Summary Judgment at 19. Ms. Hinds has not identified any specific email messages to which she objects or created a triable issue of fact as to whether Mr. Pepin had some discriminatory motive rather than the motive that the Defendant claims.

Ms. Hinds' seventh discrimination claim is that the CFPB discriminated against her in two respects when determining her starting salary. Compl. ¶ 24-25. First, Ms. Hinds alleges that the CFPB denied her pay-retention benefits to match her prior salary at a different federal agency, even though it granted pay retention benefits to a white male. *Id.* ¶ 25. Second, Ms. Hinds alleges that the CFPB gave the white male higher locality pay than she enjoyed, even though they both lived in the same geographical area. *Id.* ¶ 25. However, the Defendant responds that Ms. Hinds' pay was determined by a pay-setting tool based on her directly relevant work experience, so that any pay differential between her and other CFPB employees was authorized by the Equal Pay Act and based on non-discriminatory criteria. Def.'s Memo. ISO Mot. Summary Judgment at 20. The Defendant has provided documentation that the original salary offer to the white male in question did not match his salary at the federal agency where he previously worked, but that he negotiated a higher salary based on his directly relevant experience and training—experience and training that Ms. Hinds lacked. *Id.* at 20-21; *id.* Ex. XX. It has also provided documentation that the white male's higher locality pay was the result of an administrative error that was subsequently corrected. *Id.* at 21 n.2; *id.* Ex. YY. Ms. Hinds has not offered any evidence to create a genuine issue of fact as to whether these non-discriminatory explanations of her pay rate are pretextual. Accordingly, Ms. Hinds' seventh discrimination claim fails, like her others.

### C. The Defendant Is Entitled to Summary Judgment on Each of Ms. Hinds' Discrimination Claims

Title VII's retaliation provision makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). Like discrimination claims, Title VII retaliation claims are governed by the *McDonnell Douglas* framework. *Walker*, 798 F.3d at 1091. To state a prima facie case of retaliation, a plaintiff must allege that: (1) she "engaged in protected activity"; (2) she "was subjected to an adverse employment action"; and (3) "there was a causal link between the protected activity and the adverse action." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). In the context of retaliation claims, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). This is an objective standard for distinguishing "significant from trivial harms" that does not depend on a plaintiff's subjective feelings and does not make actionable "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68-69.

If the plaintiff states a prima facie case of retaliation, the employer then bears the burden of identifying "the legitimate . . . non-retaliatory reason on which it relied in taking the complained-of action." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). If the employer provides such an explanation of its conduct, the disposition of a motion for summary judgment turns on whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted . . . non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Id.* at 1092.

Like her discrimination claims, Ms. Hinds' 14 retaliation claims fail because the Defendant has provided non-discriminatory justifications for the conduct of which she complains and Ms. Hinds has not adequately challenged these justifications as pretextual. Many of them also fail because the conduct of which she complains does not qualify as adverse employment action.

Ms. Hinds' first retaliation claim is that Mr. Pepin refused to authorize her to travel to an exam site on a flight scheduled to arrive after the start of the exam. Compl. ¶ 27. Ms. Hinds alleges that this refusal was unreasonable because: (1) Mr. Pepin did not contact the exam's portfolio manager or examiner in charge to determine whether Ms. Hinds' late arrival would disrupt the exam; (2) "Due to flight and other delays," there was no guarantee that Ms. Hinds would arrive on time even if she booked an earlier flight; (3) "Mr. Pepin could have instructed the Plaintiff to travel a day in advance if it was imperative that she arrived at a specific time"; and (4) Other examiners were not penalized for late arrivals that were due to travel delays. *Id.* Ms. Hinds does not allege, however, that other examiners were allowed to *plan* to arrive late. Nonetheless, she alleges that Mr. Pepin refused to allow her to plan a late arrival "to incite a travel incident so that he could issue a disciplinary action." *Id.* Because Ms. Hinds makes no suggestion that disciplinary action ensued, there was no adverse employment action: Asking an employee to plan to arrive at work on time is not an act that would dissuade a reasonable worker from pursuing activity protected by Title VII. *See Burlington*, 548 U.S. at 68. Moreover, the Defendant explains Mr. Pepin's conduct on the non-discriminatory, and entirely reasonable ground that he wanted his employees to make travel arrangements that would enable them to arrive to work assignments on time. Ms. Hinds has not set forth facts sufficient to create a

genuine dispute as to whether this justification is pretextual.  For both these reasons, the Defendant is entitled to summary judgment.

Ms. Hinds' second retaliation claim is that Mr. Pepin sent her an email assigning her work while she was detailed to Washington, D.C.  Compl. ¶ 28.  According to Ms. Hinds, she was detailed to D.C. pending an internal investigation into complaints that she had lodged against Mr. Pepin, and it was inappropriate for Mr. Pepin to assign work to her because he did not know whether she would remain under his supervision after the investigation.  *Id.*  The Defendant has produced Mr. Pepin's email, which outlined the assignments for all the examiners under his supervision and stated that another examiner was to complete the work that he had been assigned to do with Ms. Hinds.  Def.'s Memo. ISO Mot. Summary Judgment Ex. HH. Ms. Hinds has not disputed that this is the email of which she complained.  Ms. Hinds has not created a triable fact issue as to whether Mr. Pepin acted in a way that would deter a reasonable employee from engaging in protected activity or as to whether the Defendant is relying on pretext in asserting that the email served the legitimate purpose of ensuring that employees understood what work they were expected to do.  Accordingly, the Defendant is entitled to summary judgment on this claim.

Ms. Hinds' third retaliation claim is that the CFPB denied her request to be reassigned outside the Northeast Region, in which Mr. Pepin worked, pending resolution of an investigation into her harassment complaints against Mr. Pepin.  Compl. ¶ 29.  Ms. Hinds alleges that CFPB policy allows an employee who files a harassment complaint to "request" reassignment, that the CFPB initially reassigned her to work in D.C., and that the CFPB declined her request to extend her D.C. assignment when it ended prior to the conclusion of the internal investigation.  *Id.*  The Defendant has explained that Ms. Hinds went back to work in the Northeast Region after her

temporary detail to D.C. because the detail to D.C. ended and there was no policy entitling Ms. Hinds to an extension. Def.'s Memo. ISO Mot. Summary Judgment at 24. Ms. Hinds has provided no basis for concluding that the Defendant acted for retaliatory reasons rather than simply allowing events to follow their normal course.

Ms. Hinds' fourth retaliation claim is that, when she returned to the Northeast Region, she was temporarily assigned to a manager named Alla Vaynrub, who she believes had a close relationship with Mr. Pepin because she covered for him when he was away from work. Compl. ¶ 30. Even though this reassignment had the effect of granting her apparent desire not to be supervised by Mr. Pepin, Ms. Hinds was still dissatisfied. Ms. Hinds wishes that the CFPB had consulted her before reassigning her to a new manager and that it had taken unspecified steps to protect her from Title VII violations. *Id.* However, Ms. Hinds has not alleged that her reassignment to work under Ms. Vaynrub caused her any objective harm, and the reassignment in itself is not an adverse employment action. *See Forkkio*, 306 F.3d at 306 (holding that assignment to work under supervisor whom plaintiff considered offensive was not an adverse action supporting a retaliation claim because plaintiff had not alleged that the assignment caused any objective harm). Moreover, Ms. Hinds has not raised a fact issue as to pretext in response to the Defendant's assertion that she was assigned to work for Ms. Vaynrub until a permanent supervisor could be assigned because Ms. Vaynrub was available to coordinate and supervise her exam work. *See* Def.'s Memo. ISO Mot. Summary Judgment at 25. For both these reasons, the Defendant is entitled to summary judgment on this retaliation claim.

Ms. Hinds' fifth retaliation claim is that she was assigned to work on an exam where she would be required to report to yet another employee that she had mentioned in her EEO complaint. Compl. ¶ 31. Ms. Hinds again complains that the CFPB failed to take unspecified

steps to protect her from Title VII violations and that she was not consulted prior to receiving exam assignments.  *Id.*  However, the Defendant responds that the official who gave Ms. Hinds her assignment was not aware that she had any dispute with the other examiners on the exam and made the assignment for non-retaliatory reasons, including the fact that the exam provided opportunities that would further Ms. Hinds' career development and the fact that Ms. Hinds was unwilling to drive to exam sites, thus limiting the pool of potential projects on which she could work.  Def.'s Memo. ISO Mot. Summary Judgment at 26.  Moreover, the Defendant notes that Ms. Hinds never in fact worked on the exam of which she complains:  When she asked to be reassigned to a different exam, the CFPB overcame significant logistical hurdles to accommodate her request before the exam started.  *Id.* at 25-26.  The Defendant is entitled to summary judgment because there is no genuine dispute as to whether the non-retaliatory reasons for the CFPB's conduct were pretextual.

Ms. Hinds' sixth retaliation claim is that she was required to meet with Mr. Pepin to discuss her 2014 performance evaluation.  Compl. ¶ 32.  Although Ms. Hinds was no longer working for Mr. Pepin at the time, he was required to prepare her evaluation because he had supervised her during the fiscal year under review.  *Id.*  Ms. Hinds alleges that the meeting was unnecessary because Mr. Pepin was not her current manager and because he sent her a copy of her performance evaluation prior to the meeting.  *Id.*  The Defendant responds that requiring Ms. Hinds to meet with Mr. Pepin was not an adverse employment action and explains that all field managers, including Mr. Pepin, had been instructed to conduct in-person reviews "because such meetings are more effective and help foster communication."  Def.'s Memo. ISO Mot. Summary Judgment at 26.  There is no genuine dispute as to whether this non-retaliatory directive, which applied to all employees, was a pretext for retaliation against Ms. Hinds.

Ms. Hinds' seventh retaliation claim is that on November 14, 2014, Erin Berger, the portfolio manager for the exam on which she was working at the time, sent communications to Ms. Hinds berating her for not completing work on the day that she had to travel to meet with Mr. Peppin for her performance review. Compl. ¶ 33. The Defendant responds that the email in question, which it has produced, is not an adverse employment action. Def.'s Memo. ISO Mot. Summary Judgment at 28. The email is focused on resolving several concerns that Ms. Hinds raised to Ms. Berger, is professional rather than berating, and would not dissuade a reasonable worker from engaging in conduct protected by Title VII. *See id.* Ex. SS at 125-27. As the Defendant also suggests, Ms. Berger had legitimate reasons for asking that the employees under her supervision be responsive to email during work hours. *Id.* at 28. Particularly in light of the fact that Ms. Berger was not aware that Ms. Hinds had engaged in activities protected by Title VII, Ms. Hinds has not created a genuine dispute as to whether the email was motivated by retaliatory animus rather than be these legitimate managerial concerns. *See id.* at 27-28; *id.* Ex. OO at 2377.

Ms. Hinds' eighth retaliation claim is that Ms. Berger's email stated that Ms. Berger would not support Ms. Hinds' request for reassignment to another exam, even though Ms. Hinds had complained about another employee. Compl. ¶ 34. Ms. Hinds' complaint was that this employee was copying project managers on his emails to her, and Ms. Hinds expressly stated, "If this policy is extended to all examiners then that's fine." Def.'s Memo. ISO Mot. Summary Judgment Ex. SS at 126. Ms. Berger's email reminded Ms. Hinds that, as she had already been informed, the policy of copying project managers applied to all examiners. *Id.* The Defendant explains that, as Ms. Berger's email states, Ms. Berger did not support reassignment because Ms. Hinds was a necessary part of the exam team and because removing anyone from the team would

disrupt the examination substantially. *Id.* at 29; *id.* Ex. SS at 125. Ms. Hinds has not created a genuine dispute as to whether this justification of Ms. Berger's email is pretextual, and any allegation that Ms. Berger's real motive was retaliatory is undermined by the fact that Ms. Berger was not aware of Ms. Hinds' Title VII activities at the time she wrote her email. *See id.* at 28; *id.* Ex. OO at 2377.

Ms. Hinds' ninth retaliation claim is that Mr. Pepin denied her request for a promotion on December 16, 2014. Compl. ¶ 35. The Defendant explains that Mr. Pepin did not support her request for promotion—a decision that ultimately lay with more senior management—because of Ms. Hinds' refusal to provide the work-product documentation he needed to evaluate her eligibility and because of her other problems, such as failure to comply with CFPB travel policies and failure to meet assignment deadlines. Def.'s Memo. ISO Mot. Summary Judgment at 29-30; *id.* Ex. SS at 29-30. Ms. Hinds has not raised a question of fact as to whether these legitimate reasons for Mr. Pepin's decision were pretextual.

Despite her earlier complaints about being supervised by Ms. Vaynrub—not to mention her complaints about being supervised by Mr. Pepin before that—Ms. Hinds' tenth retaliation claim is that she was reassigned from her temporary manager, Ms. Vaynrub, to a permanent manager, Marsha Vaughn.[13] Compl. ¶ 36. Ms. Hinds complains that she "did not receive any advance information regarding why" she was reassigned. *Id.* She infers that she was reassigned for retaliatory reasons from the facts that: (1) Before the reassignment, Ms. Vaughn had been the subject of an EEO complaint by an African-American woman and had been the subject of several union grievances; and (2) After the reassignment, Ms. Vaughn replied to the slaughtered

---

[13] As discussed above, Ms. Hinds failed to administratively exhaust this claim. This provides an independently adequate basis for summary judgment in addition to the grounds discussed here.

snowman email as described in Part I above.[14]  *Id.*   The Defendant has explained the non-retaliatory reasons for which Ms. Hinds was reassigned to work for Ms. Vaughn:  Ms. Hinds needed a permanent supervisor to take the place of her temporary supervisor, Ms. Hinds had asked to be assigned to a new manager, and working for Ms. Vaughn could provide Ms. Hinds a fresh start since Ms. Vaughn had transferred from another region and had no connection to the prior events with Ms. Hinds.  Def.'s Memo. ISO Mot. Summary Judgment at 30-31; *id.* Ex. QQ at 2442.[15]   The Defendant is entitled to summary judgment on this claim because there is no genuine dispute as to whether these legitimate reasons are pretextual.

---

[14]  The complaint alleges that the CFPB violated Title VII by reassigning Ms. Hinds, and cites the email as evidence to support this claim.  However, subsequent filings suggest that Ms. Hinds also believes that Ms. Vaughn violated Title VII by sending her email, which states in whole, "I love this!!"  Correction to Pl.'s Opp. to Def.'s Mot. Summary Judgment Ex. A.  Although Ms. Hinds has alleged that "Ms. Vaughn inappropriately distributed a violent image to the Plaintiff," Compl. ¶ 36, the image in question was distributed to a group of people including Ms. Hinds in an earlier email, to which Ms. Vaughn replied.  Correction to Pl.'s Opp. to Def.'s Mot. Summary Judgment Ex. A.  Ms. Hinds has not created a genuine issue of fact as to whether Ms. Vaughn's email would dissuade a reasonable worker from engaging in protected conduct or as to whether Ms. Vaughn's message was motivated by retaliatory intent.

[15]  This defense of the assignment to work under Ms. Vaughn does not rely in any way on what Ms. Hinds alleges is a false insinuation by the Defendant that she filed an EEO complaint against an individual named "Mr. Chicorikas."  *See* Compl. ¶ 36.  According to Ms. Hinds, this insinuation was made in "Defendant's summary Judgment" (presumably a document or decision related to the administrative proceedings that preceded this case), which stated as follows:

> Complainant's argument that no one from the Southeast Region should supervise her is even more farfetched, and it is contradicted by the Complainant's simultaneous assertion that she should have been assigned to Mr. Chicorikas—a supervisor [in] the Northeast Region, which also has EEO activity, including Complainant's own complaints.

*Id.*  I do not believe this statement insinuates that Ms. Hinds filed an EEO complaint against Mr. Chicorikas.  In any event, whether or not Ms. Hinds filed an EEO complaint against Mr. Chicorikas is irrelevant to the analysis above and has no impact on the disposition of this case.

Ms. Hinds' eleventh retaliation claim is that Ms. Vaughn planned a "surprise trip" to Ms. Hinds' examination site in New York during her first week working in the Northeast Region.[16] Compl. ¶ 37. Ms. Hinds alleges that this was inappropriate because Ms. Vaughn should have first visited the exams in her own portfolio and because an African-American woman had brought an EEO complaint against Ms. Vaughn. *Id.* However, the Defendant has provided evidence that Ms. Vaughn planned her trip at the request of the portfolio manager, who needed someone to cover for her, and that Ms. Vaughn wanted to meet Ms. Hinds on the trip because Ms. Hinds was the only member of her team that she had not previously met. Def.'s Memo. ISO Mot. Summary Judgment at 31; *id.* Ex. LL at 3125. Moreover, Ms. Vaughn's plan to travel to New York had no concrete impact on Ms. Hinds since Ms. Vaughn ended up cancelling her trip. *Id.* at 31; *id.* Ex. LL at 3125. The Defendant is entitled to summary judgment on the alternative grounds that merely planning a trip without informing an employee of it is not an adverse employment action that would dissuade a reasonable worker from engaging in protected activity and that Ms. Hinds has not created a genuine dispute as to pretext.

Ms. Hinds' twelfth retaliation claim is that Ms. Vaughn asked her to attend a group meeting during the week of January 19, 2015, despite having approved Ms. Hinds to use official time to work on her EEO complaint that week.[17] Compl. ¶ 38. She also alleges more generally that her managers assigned her too much work for her to pursue her EEO complaint effectively.

---

[16] Ms. Hinds also failed to exhaust this claim, which provides an alternative basis for summary judgment as discussed above.

[17] This is the last of Ms. Hinds' unexhausted claims. The Defendant is entitled to summary judgment on this claim due to Ms. Hinds' failure to exhaust as well as for the reasons explained here.

*Id.*[18]  However, Ms. Vaughn told Ms. Hinds when she asked her to call in for the one-hour meeting that she should record the call as work time so that it would not count toward the time that had been set aside for her EEO complaint.  Def.'s Memo. ISO Mot. Summary Judgment at 32; *id.* Ex. LL at 3216.  Thus, participation in the call did not adversely affect Ms. Hinds' ability to work on her EEO complaint, and Ms. Vaughn took steps to ensure that this would be the case. The Defendant observes that Ms. Vaughn explained at the time that she wanted Ms. Hinds to participate in the meeting because she thought it was important for team building.  *Id.* at 32; *id.* Ex. LL at 3216.  Thus, there is a legitimate reason for Ms. Vaughn's conduct, and Ms. Hinds has provided no basis for questioning it as pretextual.

Ms. Hinds' thirteenth retaliation claim is that Ms. Vaughn attempted to micromanage her work by: (1) Asking Ms. Hinds whether she intended to be in New York on May 5, 2015; (2) Communicating with the portfolio manager and examiner in charge for an exam on which Ms. Hinds was working in order to monitor Ms. Hinds' work; and (3) Requiring Ms. Hinds to prepare a travel voucher while she was on bereavement leave so that she could obtain authorization to travel to an exam when she returned to work.  Compl. ¶ 39.  This allegation does not concern an adverse employment action.  Moreover, Ms. Hinds has not created a genuine fact issue as to whether Ms. Vaughn's actions were justified by her legitimate interest in managing an

---

[18]  Ms. Hinds also alleges in this paragraph of her complaint that the Defendant responded to her EEO complaint in part by stating (presumably in a filing), "Complainant's allegation that this request was somehow retaliatory defies common sense . . . ."  *Id.*  Ms. Hinds notes that "the requirements for filing an EEO Complaint do not mandate common sense as a prerequisite" and alleges that the Defendant's statement associates "filing an EEO complaint with the lack of common sense," thereby deterring employees from protected conduct.  *Id.*  However, the statement in question clearly refers to a specific allegation as defying common sense and not to the activity of filing an EEO complaint as defying common sense.  I make no comment regarding her claim that "[t]he CFPB supposedly has controls in place in their hiring procedures to weed out applicants without common sense."  *See id.*

employee under her supervision.  *See* ¶33.  The record reflects that Ms. Hinds emailed

Ms. Vaughn at the end of a period of bereavement leave to let her know that she would be taking

a sick day on May 3, 2015, taking a leave day on May 4, 2015, and returning to work on May 5,

2015.  *Id.* Ex. AAA at 1118.  The next day, which was May 4, 2015, Ms. Vaughn emailed

Ms. Hinds, stating, "I hope you feel better.  I'm assuming you will be at the job site in the

morning.  I haven't seen a travel authorization yet."  *Id.*  Ms. Hinds replied by saying that she

would not be working on site at the exam because she could not travel to the site without

preparing a travel authorization and because she could not prepare the travel authorization until

her first day back at work.  *Id.* at 1117.  Ms. Vaughn offered no objection, but asked Ms. Hinds

what she would be working on off-site.  *Id.*  Rather than answering the question, Ms. Hinds

replied, "When I am assigned to exam, I am under the supervision of the Portfolio FM and the

EIC.  I believe that they are both responsible enough to make certain that my workload is

appropriate."  *Id.*  Whatever insights this exchange may give into Ms. Hinds' amenability to

supervision, this incident is not actionable under Title VII.

Ms. Hinds' fourteenth retaliation claim is that Ms. Vaughn retaliated against her by

failing to conduct a promotion review within 30 days of May 5, 2015.  Compl. ¶ 40.  Ms. Hinds

alleges that such review was required by CFPB policies and procedures.  *Id.*  However, the

Defendant has explained that the CFPB's promotion policy, as quoted in the complaint itself,

required a promotion review within 30 days of May 5, 2014.  Def.'s Memo. ISO Mot. Summary

Judgment at 33.[19]  The Defendant has explained Ms. Vaughn's failure to conduct a promotion

review on the legitimate grounds that CFPB policy did not call for her to conduct a promotion

review, Ms. Hinds did not ask for her to conduct a promotion review, and Ms. Hinds had written

_____

[19]  Ms. Hinds' complaint about not being promoted at that date is discussed above.

to Ms. Vaughn stating, "Regarding my plan to reach [promotion], I will not be discussing that particular issue with you. This is [sic] issue is under investigation and I can only recommend that you let the system work." *Id.* at 34; *id.* Ex. BBB at 1124. Ms. Vaughn apparently accepted Ms. Hinds' recommendation. Ms. Hinds has not created a genuine issue of fact as to whether this non-retaliatory explanation is pretextual. Accordingly, the Defendant is entitled to summary judgment on this claim as on all the others.

Unlike in her administrative proceeding, at no point in the case before me has Ms. Hinds alleged a hostile work environment claim. Had she do so, though, on the evidence before me I would find that the Defendant was entitled to summary judgment on that count, too. Taken as a whole, Ms. Hinds' serial petty complaints against a succession of supervisors at the CFPB leads to the conclusion that she is difficult to supervise, not that she was subjected to an "abusive working environment." *See Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011). She has failed to provide evidence of severe or pervasive "discriminatory intimidation, ridicule, and insult." *See id.*

### D. Ms. Hinds Is Not Entitled to Additional Discovery Before Summary Judgment

A party opposing a motion for summary judgment may seek additional discovery based on an affidavit or declaration specifying the reasons that she cannot yet present the facts necessary to justify her opposition. Fed. R. Civ. P. 56(d). To adequately specify the reasons for further discovery, a party opposing summary judgment must "indicate what facts she intend[s] to discover that would create a triable issue and why she could not produce them in opposition to the motion." *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999). An affidavit or declaration in support of further discovery must be factually supported and may not rely on conclusory assertions. *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006).

Ms. Hinds argues that she is entitled to further discovery before summary judgment. Pl.'s Opp. to Def.'s Mot. Summary Judgment at 8-9, 26-29; Pl.'s Sur-Reply to Def.'s Mot. Summary Judgment. However, her request for further discovery is not supported by an affidavit or declaration as required by the Federal Rules. *See Hicks v. Gotbaum*, 828 F. Supp. 2d 152, 159 (D.D.C. 2011) (denying further discovery when party opposing summary judgment did not file an affidavit or declaration). Moreover, Ms. Hinds has not specified what facts she intends to discover or why they would create a triable issue defeating summary judgment. *See Carpenter*, 174 F.3d at 237.[20] During the administrative proceedings that preceded this case, Ms. Hinds engaged in extensive discovery, submitting at least 27 interrogatories, 12 requests for documents, and 26 requests for admissions, as well as conducting 11 written depositions—all to supplement a 3,300-page report of investigation that included documentary evidence and sworn statements by over a dozen CFPB employees. Def.'s Memo. ISO Mot. Summary Judgment at 8-9; Reply ISO Mot. Summary Judgment at 4; EEOC Decision on Agency Motion for Summary Judgment

---

[20] Ms. Hinds makes five discovery requests. First, she seeks production of all emails from seven CFPB employees between September 2013 and July 2015, although she previously agreed to narrow this discovery request. Pl.'s Opp. to Def.'s Mot. Summary Judgment at 8; *id.* Ex. C; Pl.'s Sur-Reply to Def.'s Mot. Summary Judgment at 7. Second, she seeks production of all emails associated with the draft suspension letter mentioned in her first discrimination claim. Pl.'s Opp. to Def.'s Mot. Summary Judgment at 8, 28. Third, she seeks unspecified discovery related to her seventh discrimination claim. *Id.* at 8-9; Pl.'s Sur-Reply to Def.'s Mot. Summary Judgment at 7. Fourth, she seeks production of all emails associated with Mr. Pepin's rating of her 2013 annual performance. Pl.'s Opp. to Def.'s Mot. Summary Judgment at 29; Pl.'s Sur-Reply to Def.'s Mot. Summary Judgment at 7. Fifth, she seeks discovery regarding several internal CFPB meetings that she learned about in June of 2017. Pl.'s Sur-Reply to Def.'s Mot. Summary Judgment at 4-7. At that time, the CFPB sent Ms. Hinds a letter stating that, due to an official's inadvertent failure to maintain appropriate calendar access controls, other CFPB personnel could have improperly accessed limited information related to her that was contained in eight calendar entries for phone calls or meetings. *Id.* Ex. A. Ms. Hinds seeks unspecified discovery regarding these meetings, including, but not limited to, notes from those meetings. *Id.* at 6-7. As stated above, Ms. Hinds has not specified what information she thinks she will discover or why it will matter in this case.

at 20.[21]  Ms. Hinds' concerns have received sustained attention over the last four years, and she

has been given ample opportunity to develop them.  She is not entitled to further discovery

before summary judgment.

## IV. CONCLUSION

Ms. Hinds paints a picture of racist behavior run amok at the CFPB: that over a two-year

period, numerous CFPB supervisors participated in 21 acts of racial discrimination and unlawful

retaliation against her.  Even drawing all reasonable inferences in her favor, the Court is left with

a very different conclusion: that Ms. Hinds has ascribed unlawful motives to run-of-the-mill

workplace annoyances and well-meaning efforts by her colleagues to supervise and train a

difficult employee.  Racial discrimination is a persistent and invidious threat to our society's

---

[21]  Ms. Hinds challenges the adequacy of the record developed in the administrative proceedings, in large part because the investigator submitted a copy of the slaughtered snowman email that has a missing-image placeholder.  *See, e.g.*, Pl.'s Opp. to Def.'s Mot. Summary Judgment at 7-8 (alleging that the omission of the slaughtered snowman's image was "an obvious attempt to help the CFPB fight against the Plaintiff's claims"); *id.* Ex. J at 1501; Pl.'s Mot. Determine Whether Certain Witnesses Provided False and Misleading Statements Under Penalties of Perjury at 2-3 (alleging that the investigator deliberately omitted the slaughtered snowman's image to help the CFPB); *id.* Ex. B (same); Pl.'s Mot. Declare that the ROI Violates 29 CFR 1614 108(b) and Initiate a DOJ Referral at 3, 5-6 (same); *id.* at Ex. B (same); Pl.'s Motion to Address False Information and Potential Evidence Tampering at 3 (same); *id.* Ex. B (same); Pl.'s Reply ISO Mots. at 3, 8 (same); *id.* Ex. E (same); Pl.'s Mot. Reconsideration for a Court-Appointed Attorney at 3-4, 6-7 (same); *id.* Ex. D; *see also* Pl.'s Sur-Reply to Def.'s Mot. Summary Judgment at 6 (asserting that the CFPB should have produced calendar entries that referenced her, along with any notes from the meetings described by those calendar entries); *id.* at 7 (complaining that the EEOC instructed her not to file a motion to compel the production of evidence that had already been produced, complaining that, after she agreed to narrow her request, the CFPB did not produce all the emails she originally requested, and complaining that she believes some witnesses provided false statements).  The slaughtered snowman's many posthumous appearances in the record graphically illustrate that Ms. Hinds knows how to identify specific missing facts that she considers material to her claims.  *See supra* note 2.  She has not specified the missing facts that she intends to establish through further discovery, although this is what she needed to do in order to satisfy the Federal Rules.  *See Carpenter*, 174 F.3d at 237.  Her concern that the record may have been inadequately developed is not an adequate substitute for meeting this requirement.

welfare, but like pulling a fire alarm for kicks in a nursing home, false allegations of discrimination impose high costs on us, too.  For the reasons explained above, summary judgment will be granted in favor of the Defendant.  A separate order will issue.


Dated: February 20, 2018

TREVOR N. MCFADDEN
United States District Judge